Harry C. KAUFMANN; Eileen M. Kaufmann; Harry Kaufmann Motor Cars, Inc.; and Kaufmann–Campbell Leasing, Inc., Plaintiffs,

v.

The UNITED STATES of America; Neil Saari, personally and in his official capacity; John T. Ader, personally and in his official capacity; Michael J. Murphy, personally and in his official capacity; Larry Kaiser, personally and in his official capacity; Peter K. Nunez, personally and in his official capacity; Bruce R. Juppe, personally and in his official capacity; Mel S. Johnson, personally and in his official capacity; James Ansier, personally and in his official capacity; Thomas Schafer, person-

ally and in his official capacity; Greg Myre, personally and in his official capacity; Richard Ahern, personally and in his official capacity; and Diane Svoboda, personally and in her official capacity; Defendants.

No. 93–C–482.

United States District Court, E.D. Wisconsin.

Dec. 22, 1993.

Peterson, Johnson & Murray by Terry E. Johnson and Michael P. Crooks, Milwaukee, WI, for plaintiffs.

Thomas P. Schneider, U.S. Atty. by James L. Santelle, Asst. U.S. Atty., Milwaukee, WI, for defendants.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

On May 13, 1993, the plaintiffs commenced this action against the United States of America and twelve individual defendants in both their official and personal capacities. Presently before the court are four motions. The motions consist of: (1) a motion to dismiss the plaintiffs' complaint and action [motion # 1] filed by the United States government [the government] on behalf of all the individual defendants except Thomas Schafer [collectively, the individual federal defendants] and the United States; (2) a motion to stay all discovery [motion # 2] filed by the government on behalf of the United States and the individual federal defendants; (3) a motion to dismiss the plaintiffs' complaint and action [motion # 3] filed by the government on behalf of Mr. Schafer; and (4) a motion to stay all discovery [motion # 4] filed by the government on behalf of Mr. Schafer.

Motions # 3 and # 4 were filed after, and thus separately from, motions # 1 and # 2 because at the time the government filed motions # 1 and # 2 it had not yet agreed to undertake representation of Mr. Schafer. However, the government subsequently agreed to represent Mr. Schafer and, upon undertaking that representation, it filed motions # 3 and # 4 on his behalf.

The aspect of motion # 1 requesting the dismissal of the plaintiffs' complaint against the United States and the individual federal defendants in their official and personal capacities will be granted in part and denied in part as follows: (1) the court will dismiss, with prejudice, counts I through V against the United States and the individual federal defendants in their official capacities; (2) the court will dismiss, with prejudice, counts VI and VII against the individual federal defendants in their official and personal capacities; (3) the court will dismiss, without prejudice, counts I through V against the individual federal defendants in their personal capacities; (4) the court will not dismiss counts VI and VII against the United States; and (5) the court will not rule on the plaintiffs' request for attorneys fees which they designated as a claim for relief in their complaint (i.e. "count VIII").

The portion of motion # 3 seeking the dismissal of the plaintiffs' complaint against Mr. Schafer in his official and personal capacities will be granted. Specifically: (1) the court will dismiss, with prejudice, counts I through V against Mr. Schafer in his official capacity; (2) the court will dismiss, with prejudice, counts VI and VII against Mr. Schafer in his official and personal capacity; (3) the court will dismiss, without prejudice, counts I through V against Mr. Schafer in his personal capacity; and (4) the court will not rule on the plaintiffs' request for attorneys fees which they designated as a claim for relief in their complaint (i.e. "count VIII").

Because the court will not dismiss counts VI and VII of the plaintiffs' **complaint** against the United States, nor dismiss, **with prejudice,** counts I through V of the plaintiffs' **complaint** against the individual federal defendants or Mr. Schafer in their personal capacities, the court will not dismiss this **action** as requested by the government in motions # 1 and # 3. Thus, to that extent, motions # 1 and # 3 will be denied. Finally, motions # 2 and # 4 to stay discovery will be dismissed as moot.

## I. BACKGROUND

In the aftermath of the federal criminal prosecution of Harry C. Kaufmann, *see United States v. Kaufmann*, 985 F.2d 884 (7th Cir.1993) (affirming conviction on one of five

counts), *cert. denied,* —— U.S. ——, 113 S.Ct. 2350, 124 L.Ed.2d 259 (1993), the plaintiffs filed this civil action for damages. In a complaint laced with the phrase "on information and belief," the plaintiffs make the following allegations.

Plaintiffs Harry Kaufmann and his wife Eileen Kaufmann are citizens of Milwaukee. Plaintiffs Harry Kaufmann Motor Cars, Inc. [KMC] and Kaufmann–Campbell Leasing, Inc. [Kaufmann–Campbell] are both Wisconsin corporations. At all times relevant to this complaint, Mr. Saari, Mr. Kaiser, Mr. Ansier, Mr. Myre, and Mr. Ahern were agents of the Internal Revenue Service [IRS]; Ms. Svoboda was chief of the Criminal Investigation Division of the IRS; Mr. Ader was a director of the Wisconsin division of the IRS; Mr. Murphy was the senior deputy commissioner of the IRS Criminal Investigation Division; Mr. Nunez was assistant secretary of enforcement for the Department of Treasury; Mr. Juppe was an United States probation department employee; Mr. Johnson was an assistant United States attorney; and Mr. Schafer was an informant, agent and employee of the United States government.

On September 11, 1990, a federal grand jury indicted Mr. Kaufmann on four counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B) and one count of attempted money laundering in violation of 18 U.S.C. § 1956(a)(3)(B). The indictment also "called for the forfeiture of any property, real or personal, involved in the offense, or any property traceable to such property, including Kaufmann's interest in KMC and in all assets of that corporation, pursuant to 18 U.S.C. § 982(a)." *Complaint* at ¶ 20. On September 12, 1990, United States Magistrate Judge Aaron Goodstein issued search and seizure warrants for the KMC premises. Federal agents executed those warrants the next day and "seized all inventory, records, and assets of the [KMC] business, including 99 automobiles." *Id.*

The plaintiffs allege that "[o]n information and belief the indictment against [Mr.] Kaufmann had no basis in fact or law and was obtained through the presentation of evidence to the grand jury which was either untrue or gained through improper methods by investigative and law enforcement officers of the United States Government." *Id.* at ¶ 22. The plaintiffs aver that those defendants involved with the gathering and presentation of false and/or illegally obtained evidence to the grand jury included Mr. Saari, Mr. Ansier, Mr. Myre, Mr. Ahern, Mr. Kaiser, Ms. Svoboda, Mr. Murphy and Mr. Johnson. The plaintiffs also allege that these eight defendants, along with Mr. Nunez, were involved in the seizure of KMC assets on September 13, 1990, and that "[o]n information and belief the seizure of the assets had no basis in fact or law and was achieved through the presentation of untrue evidence or evidence gained through improper investigation." *Id.* at ¶ 23.

The plaintiffs also allege "[o]n information and belief, despite knowing that no basis in fact or law existed for prosecuting [Mr.] Kaufmann on some or all counts," that Mr. Johnson, aided by the investigative activities of Mr. Saari, Mr. Ansier, Mr. Kaiser and Mr. Schafer, prosecuted Mr. Kaufmann. *Id.* at ¶ 24. The jury acquitted Mr. Kaufmann on counts one and two, deadlocked on counts three and four (these counts were subsequently dismissed by the government), and convicted Mr. Kaufmann on count five. The plaintiffs aver that "[o]n information and belief, the conviction was achieved through the presentation of improperly gathered and untrue evidence and was a result of a desire to put [Mr.] Kaufmann out of business." *Id.* at ¶ 25.

Mr. Kaufmann was sentenced to almost four years in prison and $30,000 in fines. The plaintiffs charge that his sentence "was based, at least in part, upon the report of defendant Juppe, who skewed the same in an attempt to achieve a harsh sentence for [Mr.] Kaufmann." *Id.* at ¶ 26. The plaintiffs also aver that the United States "has placed tax liens on [Mr.] Kaufmann's home and rental property under the guise of attempting to protect its interest in collecting the $30,000 fine." *Id.* at ¶ 27.

As a result of the alleged improper investigation and unlawful conduct by law enforcement officers and the agencies of the United States, the plaintiffs allege that Mr. and Mrs.

Kaufmann "were forced to spend in excess of $250,000.00 to defend against the government's allegations and suffered loss of income, emotional damages and other personal injuries." *Id.* at ¶ 28. Furthermore, the plaintiffs charge that "KMC and Kaufmann–Campbell [KCL] sustained loss of profits, depreciation of assets, additional accounting fees and increased operating expenses" as a result of the actions of the United States and the other defendants. *Id.*

As relief, the plaintiffs request compensatory and punitive damages against the individual federal defendants and Mr. Schafer [collectively, the individual defendants] and compensatory damages against the United States. The plaintiffs also seek attorneys fees from the United States and the individual defendants.

The plaintiffs allege seven substantive claims for relief in their complaint: (1) "Violation of Plaintiffs' 4th Amendment Rights Actionable Under *Bivens*" [count I]; (2) "Violation of Plaintiffs' 5th Amendment Rights Actionable Under *Bivens*" [count II]; (3) "Violation of Plaintiffs' 8th Amendment Rights Actionable Under *Bivens*" [count III]; (4) "Conspiracy Actionable Under 42 U.S.C. § 1985" [count IV]; (5) "Outrageous Conduct Actionable Under Wisconsin Common Law and *Bivens*" [count V]; (6) "Malicious Prosecution Actionable Under Wisconsin Common Law and 28 U.S.C. 2680(h)" [count VI]; and (7) "Abuse of Process Actionable Under Wisconsin Law and 28 U.S.C. 2680(h)" [count VII].

The plaintiffs also seek attorneys fees pursuant to 28 U.S.C. § 2412(b) and 42 U.S.C. § 1988 in a claim designated as count VIII. However, the court will construe count VIII as a prayer for relief contingent upon the plaintiffs' prevailing on the merits of one or more of their seven substantive claims for relief (i.e. counts I through VII) rather than a separate substantive claim for relief.

As to the seven substantive counts, the plaintiffs do not precisely allege the basis for federal court jurisdiction. Instead, they allege a smorgasbord of jurisdictional theories without linking them to the specific counts subsequently pleaded in their complaint. In particular, the plaintiffs allege that personal jurisdiction over the individual defendants

"exists by virtue of their citizenship and WIS.STATS. § 801.05." *Complaint* at ¶ 1. The plaintiffs allege subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1343, 1346(b), 1367, 2680(h) and under the substantive rights created by the United States Constitution as first recognized by the United States Supreme Court in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Sifting through the plaintiffs' jurisdictional allegations, the plaintiffs' alleged jurisdictional basis for counts I, II, III and V appears to be 28 U.S.C. § 1331 and *Bivens;* for count IV, 28 U.S.C. § 1343; and for counts VI and VII, the Federal Torts Claim Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671–80. The plaintiffs also specifically allege that the United States consented to suit under the FTCA pursuant to 28 U.S.C. § 2680(h).

The plaintiffs also enigmatically allege that "[s]upplemental jurisdiction is based on 28 U.S.C. § 1367," although it is not evident from the plaintiffs' complaint that such an allegation is necessary. *Complaint* at ¶ 2. The plaintiffs do not appear to allege any pendant state law claims in their complaint although they do allege that counts V, VI and VII are claims "actionable under Wisconsin common law." However, count V is designated as a *Bivens* claim which by definition must be premised on a violation of the federal Constitution and not state law. *See Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980).

The allegations that counts VI and VII are "actionable under Wisconsin law" would appear to be made simply in support of the plaintiffs' respective FTCA claims; the FTCA permits actions against the United States for tort liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred (i.e. Wisconsin)." *See* 28 U.S.C. § 1346(b).

## II. DISMISSAL OF THE IMPROPERLY NAMED DEFENDANTS IN EACH COUNT OF THE PLAINTIFFS' COMPLAINT

As evidenced by the caption of their complaint, the plaintiffs ostensibly bring each

count of their complaint against the United States and against each individual defendant in his or her official and personal capacity. However, not all counts of the plaintiffs' complaint can be prosecuted against the United States and against each individual defendant in his or her official and personal capacity.

The plaintiffs have alleged four *Bivens* claims against the defendants (counts I, II, III, and V). All of the individual defendants are government employees except Mr. Schafer, who the government contends is a private citizen. However, the plaintiffs have alleged that he was an informant, agent and employee of the government and, accepting these allegations as true for purposes of the pending motions to dismiss, the court will treat Mr. Schafer as a government employee. *See Duffy v. United States*, 966 F.2d 307, 314 (7th Cir.1992) (citing *Guccione v. United States*, 847 F.2d 1031 (2d Cir.1988), *cert. denied*, 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990), that held a FBI informant was a "federal employee for the purposes of the FTCA ... even though he was not an official government employee").

■■■ *Bivens* claims against the United States are barred by sovereign immunity. *See, e.g., Parsons v. Aguirre*, 123 F.R.D. 293, 298 (N.D.Ill.1988); *Anderson v. Luther*, 521 F.Supp. 91, 96 (N.D.Ill.1981). Furthermore, a "suit against federal officers in their official capacity ... is a suit against the United States." *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir.1987). Therefore, counts I, II, III and V are appropriately pleaded only against the individual defendants in their personal capacities. *See Carlson*, 446 U.S. at 20, 100 S.Ct. at 1472 (observing that 28 U.S.C. § 2680(h) of the FTCA contemplates that victims of intentional wrongdoing by federal officials shall have a claim under the FTCA against the United States as well as a *Bivens* claim against such officials in their **personal** capacities); *Williamson v. United States Dep't of Agric.*, 815 F.2d 368, 380 (5th Cir.1987) (the "United States and its officers in pursuit of their official duties remain protected [from *Bivens* claims] by sovereign immunity"); *Holloman v. Watt*, 708 F.2d 1399, 1402 (9th Cir.1983) (a *Bivens* "suit is against the employee in his ... [personal] ... rather

than official capacity, and is therefore not a suit against the sovereign at all"), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984). Accordingly, counts I, II, III, and V as alleged against the United States and the individual defendants in their official capacities will be dismissed, with prejudice.

■■■ Count IV is a conspiracy claim alleged against the defendants pursuant to 42 U.S.C. § 1985. The United States has not waived its sovereign immunity by consenting to suit under the civil rights statutes, and therefore it, and derivatively, federal employees sued in their official capacities, *see Del Raine*, 826 F.2d at 703, are not subject to suit under 42 U.S.C. § 1985. *See, e.g., Proffitt v. United States*, 758 F.Supp. 342, 345 (E.D.Va.1990). Accordingly, count IV against the United States and the individual defendants in their official capacities will be dismissed, with prejudice. However, federal officials may be sued in their personal capacities pursuant to 42 U.S.C. § 1985. *See Hobson v. Wilson*, 737 F.2d 1, 19 (D.C.Cir.1984), *cert. denied sub nom. Brennan v. Hobson*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir.1982); *Baird v. Haith*, 724 F.Supp. 367, 384 (D.Md.1988). Thus, count IV is appropriately pleaded only against the individual defendants in their personal capacities.

■■■ Counts VI and VII are brought pursuant to the FTCA. These two counts against the individual defendants in their official capacities kaleidoscope solely into counts against the United States since claims "against federal officers in their official capacity ... [are claims] against the United States." *Del Raine*, 826 F.2d at 703. Furthermore, the FTCA has no application to claims against the individual defendants in their personal capacities. *See Wright v. United States*, 719 F.2d 1032, 1034 (9th Cir. 1983); *Morris v. United States*, 521 F.2d 872, 875 (9th Cir.1975); *White v. Franklin*, 637 F.Supp. 601, 613 (N.D.Miss.1986); *Richcreek v. Grecu*, 612 F.Supp. 111, 115 (S.D.Ind. 1985). The FTCA claims alleged in counts VI and VII against the individual defendants in their official and personal capacities will be dismissed with prejudice. However, counts

VI and VII are appropriately pleaded against the United States. *See Cross v. Fiscus,* 830 F.2d 755, 756 (7th Cir.1987) (the FTCA "applies only to the United States").

### III. ANALYSIS

In motions #1 and #3, the government has moved to dismiss the plaintiffs' complaint, and action, under three different branches of Rule 12(b), Federal Rules of Civil Procedure. First, pursuant to Rule 12(b)(2), the government moves to dismiss all counts against Mr. Murphy and Mr. Nunez for lack of personal jurisdiction. Second, pursuant to Rule 12(b)(6), and, to some extent, pursuant to the doctrines of absolute and qualified immunity, the government asks this court to dismiss counts I through V against all defendants for failure to state a claim upon which relief can be granted. Third, pursuant to Rule 12(b)(1), the government requests this court to dismiss counts VI and VII against all the defendants for lack of subject matter jurisdiction. The government also contends that the plaintiffs' demand for attorneys fees has no merit.

### A. Rule 12(b)(2), Federal Rules of Civil Procedure—Lack of Personal Jurisdiction over Defendants Murphy and Nunez

The government has moved to dismiss all counts against Mr. Murphy and Mr. Nunez in their official and personal capacities for lack of personal jurisdiction. However, for reasons articulated already, the court will dismiss, with prejudice, all counts against the individual defendants (including Mr. Murphy and Mr. Nunez) in their official capacities and counts VI and VII against the individual defendants (including Mr. Murphy and Mr. Nunez) in their personal capacities. *See supra* Part II. Consequently, I will consider the government's motion to dismiss (i.e. motion #1) for lack of personal jurisdiction only with respect to its impact on counts I through V against Mr. Murphy and Mr. Nunez in their personal capacities.

The government contends that this court does not have personal jurisdiction over Mr. Murphy and Mr. Nunez because they are not citizens of Wisconsin, Wisconsin's long-arm statute does not reach them, and, even if the long-arm statute did reach them, the exercise of personal jurisdiction over them would be unconstitutional. In the latter scenario, the government argues that exercising personal jurisdiction over Mr. Murphy and Mr. Nunez would offend "traditional notions of fair play and substantial justice" since both Mr. Murphy and Mr. Nunez do not have the requisite "minimum contacts" with the state of Wisconsin to comport with due process. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Conversely, the plaintiffs argue that Mr. Murphy's and Mr. Nunez's activities relating to the criminal indictment, prosecution and conviction of Mr. Kaufmann are within the reach of Wisconsin's long-arm statute and that they have alleged enough jurisdictional facts in their complaint to pass constitutional muster under *International Shoe.*

In actions in federal court, "[u]nless authorized by federal statute or another rule of civil procedure, a district court ... can exercise personal jurisdiction over a party who is not an inhabitant of or found within the state in which the federal court sits only if the party is subject to the jurisdiction of the courts of the state in which the district court sits." *Davis v. A & J Electronics,* 792 F.2d 74, 75–76 (7th Cir.1986). The plaintiffs allege personal jurisdiction over Mr. Murphy and Mr. Nunez pursuant to Wisconsin's long-arm statute, Wis.Stat. § 801.05(4)(a). This statute provides, in part, that:

> A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances:

> (4) **Local injury; foreign act.** In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:

> (a) Solicitation or service activities were carried on within this state by or on behalf of the defendant....

Wis.Stats. § 801.05(4) (1991–92).

Analysis of whether this court has personal jurisdiction over Mr. Murphy and Mr. Nunez

is a two step process. First, the court must determine whether the Wisconsin long-arm statute subjects Mr. Murphy and Mr. Nunez to personal jurisdiction for their alleged activities in their personal capacities relating to counts I through V. Second, if the answer is yes, then the court must "determine whether the exercise of jurisdiction under the long-arm statute runs afoul of the due process requirements of the fourteenth amendment." *See Daniel J. Hartwig Associates v. Kanner,* 913 F.2d 1213, 1216 (7th Cir.1990).

When ruling on a motion to dismiss for lack of personal jurisdiction, the court is not limited to facts alleged in the complaint but may consider materials submitted by affidavit. *See Nelson v. Park Indus., Inc.,* 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied sub nom. United Garment Mfg. Co. v. Nelson,* 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984). When deciding such a motion solely on the basis of the written submissions, the plaintiffs need only establish a prima facie case of personal jurisdiction and they are entitled to have all inferences about material jurisdictional facts resolved in their favor. *See Wisconsin Elec. Mfg. Co. v. Pennant Prods.,* 619 F.2d 676, 677 n. 1 (7th Cir.1980).

The plaintiffs contend that Mr. Murphy and Mr. Nunez were responsible for supervising the conduct and directing the activities of IRS agents "involved in investigating and gathering information for presentation to the grand jury resulting in [Mr.] Kaufmann's indictment." *See Complaint* at ¶¶'s 13–14. In my opinion, this does not amount to "[s]olicitation or service activities ... by or on behalf of" them in Wisconsin such that the Wisconsin long-arm statute reaches them and subjects them to personal jurisdiction in Wisconsin. *See* Wis.Stat. § 801.05(4)(a). However, even if I were to conclude that such supervisory activities of Mr. Murphy and Mr. Nunez did fall within the scope of Wis.Stat. § 801.05(4)(a), there are no allegations in the plaintiffs' complaint that the supervisory activities of Mr. Murphy and Mr. Nunez arose other than in their official capacities as employees of the federal government. Consequently, for purposes of counts I through V against Mr. Murphy and

Mr. Nunez in their personal capacities, I cannot conclude that Wis.Stat. § 801.05(4)(a) reaches them for personal jurisdictional purposes. *See, e.g., Green v. McCall,* 710 F.2d 29, 30 (2d Cir.1983) (holding that state long-arm statute conferred jurisdiction over members of the United States Parole Commission in their official capacities but not their individual capacities).

Assume, arguendo, that I am able to make an even greater leap of faith and somehow conclude that Wis.Stat. § 801.05(4)(a) does reach Mr. Murphy and Mr. Nunez in their personal capacities; that would potentially subject them to personal jurisdiction before this court. In fact, however, I would not be able to find the exercise of such jurisdiction constitutional, based on the allegations in the plaintiffs' complaint and supplemental materials submitted to the court. Specifically, the plaintiffs argue that Mr. Murphy and Mr. Nunez had the following contacts with Wisconsin: (1) Mr. Nunez wrote a letter to John Ader on June 15, 1990, on the topic of "Delegation of Authority to Seize and Forfeit Under 18 U.S.C. § 981 With Respect to Certain Financial Transactions Occurring in and Around Milwaukee, WI, Commencing January 1, 1987, and Continuing" (*see* exhibit A, Crook's Affidavit); (2) Mr. Nunez was *named* as a witness in Mr. Kaufmann's criminal case (*see* exhibit N, Crook's Affidavit); and (3) Mr. Murphy testified before a congressional committee regarding the enforcement of federal money laundering statutes and showed a newspaper clipping to that committee concerning the indictment of Mr. Kaufmann in Milwaukee (*see* exhibit B, Crook's Affidavit).

In my opinion, the plaintiffs have not alleged sufficient facts in their complaint, or presented additional evidence of significant contacts by Mr. Murphy and Mr. Nunez with the state of Wisconsin, to demonstrate that Mr. Murphy and Mr. Nunez purposefully availed themselves "of the privilege of conducting activity within ... [Wisconsin], thus invoking the benefits and the protections of its laws" such that they "could reasonably anticipate being subjected to suit there." *Kanner,* 913 F.2d at 1217–18. *But see Maney v. Ratcliff,* 399 F.Supp. 760, 767–69

(E.D.Wis.1975) (finding personal jurisdiction over Louisiana law enforcement officers who had used National Crime Information Center to locate fugitive in Wisconsin). Therefore, I believe the exercise of personal jurisdiction over Mr. Murphy and Mr. Nunez would be unconstitutional.

Based on the above analysis, I conclude that this court does not have personal jurisdiction over Mr. Murphy and Mr. Nunez with respect to counts I through V, in their personal capacities. Therefore, counts I through V against Mr. Murphy and Mr. Nunez in their personal capacities will be dismissed, without prejudice, for lack of personal jurisdiction.

## B. Rule 12(b)(6), Federal Rules of Civil Procedure—Failure to State a Claim Upon Which Relief Can Be Granted

The government has moved to dismiss counts I through V against the individual defendants in their official and personal capacities for failure to state claims for relief. However, for the reasons already articulated, the court will dismiss, with prejudice, counts I through V against the individual defendants in their official capacities. *See supra* Part II. Therefore, the court will now consider whether counts I through V against the individual defendants in their personal capacities should be dismissed for failure to state claims for relief.

The government argues that the plaintiffs' complaint does not include sufficient factual allegations and contains only conclusory allegations that do not even satisfy the minimum notice pleading requirements of Rule 8(a), Federal Rules of Civil Procedure. Additionally, as to Mr. Ader, Mr. Murphy, Mr. Nunez and Ms. Svoboda, the government also argues that counts I through V against them in their personal capacities fail to state claims for relief because the plaintiffs' complaint does not include allegations of their personal misconduct in their roles as supervisors.

The plaintiffs contend that they have satisfied the notice pleading requirements of Rule 8(a) and are not required to file "a 50 page complaint setting forth in great detail the factual basis for their claims." That is true, but nevertheless the plaintiffs have erred by failing to allege enough *facts* to support

counts I through V against the individual defendants in their personal capacities.

### 1. Legal Framework

#### (a) Rule 12(b)(6) Standard

 In considering the government's argument to dismiss counts I through V against the individual defendants in their personal capacities for failure to state claims for relief, I am obligated to accept as true all well-pleaded factual allegations contained in the plaintiffs' complaint, drawing all reasonable inferences in favor of the plaintiffs. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Gillman v. Burlington Northern R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir.1989). Counts I through V against the individual defendants in their personal capacities cannot be dismissed " 'unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of ... [their] ... claim[s] which would entitle ... [them] ... to relief.' " *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Although all reasonable inferences are to be drawn in favor of the plaintiffs, the plaintiffs' complaint must set forth factual allegations sufficient to establish the elements that are crucial to recovery under the plaintiffs' claims. *See Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984). Legal conclusions without factual support are not sufficient. *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir.1985).

 The court's inquiry into whether counts I through V state claims for relief against the individual defendants in their personal capacities is limited to the factual allegations contained within the four corners of the complaint; the court cannot consider supplemental materials filed subsequently to the complaint such as those in exhibits A through N contained in the affidavit of Michael P. Crooks filed with the plaintiffs' responsive brief to motion # 1. *See, e.g., Hill v. Trustees of Indiana Univ.*, 537 F.2d 248, 251 (7th Cir.1976). If such additional materials were considered by the court, the court would be obligated to treat the pending mo-

tions to dismiss as summary judgment motions which the court declines to do. *See* Rule 12(b), Federal Rules of Civil Procedure.

*(b) Requirement of Personal Misconduct of Defendants*

 Bivens claims (i.e. counts I through III and V in this action) and claims under 42 U.S.C. § 1983 "are identical save for the replacement of a state actor (§ 1983) by a federal actor (*Bivens* )." *Bieneman v. City of Chicago,* 864 F.2d 463, 469 (7th Cir. 1988), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989). Consequently, individuals sued in their personal capacities can be held liable under *Bivens* only for their individual wrongdoing. *Bivens* does not recognize the doctrine of superiors' liability or the doctrine of respondeat superior. *Employers Ins. of Wausau v. Bush,* 791 F.Supp. 1314, 1325 (N.D.Ill.1992). Therefore, in counts I through III and V against Mr. Ader, Mr. Murphy, Mr. Nunez and Ms. Svoboda in their personal capacities, *Bivens* liability can be imposed on them for actions taken by them in their supervisory roles only if the plaintiffs allege facts in their complaint demonstrating that these individuals acted or failed to act in their supervisory roles " 'with a deliberate or reckless disregard of ... [the plaintiffs'] ... constitutional rights, or if the conduct causing the constitutional deprivation occur[red] at [his or] her direction or with [his or] her knowledge and consent.' " *See Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985) (quoting *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982)). The plaintiffs must also allege facts showing a causal connection or an affirmative link between the act of the supervisory official and the alleged constitutional violation. *See Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983).

**2. Analysis of Counts I through V for Failure to State Claims Against the Individual Defendants in Their Personal Capacities**

*(a) Count I*

 In count I, the plaintiffs allege a deprivation of their "rights under the 4th Amendment of the United States Constitution actionable under Bivens." *Complaint* at

¶ 34; *see also Bivens,* 403 U.S. at 395, 91 S.Ct. at 2004 (holding that federal officials can be liable "for injuries consequent upon a violation of the Fourth Amendment"). In addition to the general allegations already summarized above in Part I, the plaintiffs make the following specific additional allegations in count I:

30. On September 13, 1990, federal agents executed a search and seizure warrant at the premises of KMC seizing all inventory, records and assets of the business, including ninety-nine automobiles. The search and seizure warrants were issued in conjunction with an indictment charging [Mr.] Kaufmann with four counts of violating 18 U.S.C. § 1956(a)(1)(B) and one count of violating 18 U.S.C. § 1956(a)(3)(B).

31. On information and belief, the indictment against [Mr.] Kaufmann had no basis in fact or law and was obtained through the presentation of evidence to the grand jury which was either untrue or gained through improper methods of investigation.

32. With regard to the first four counts, the untrue and improper information was gathered and presented by defendants Saari, Kaiser and Ansier under the direction of defendants Ader, Murphy and Nunez.

33. With regard to the fifth count of the indictment, the untrue information was furnished by defendant Thomas Schafer under the direction of defendants Myre, Saari, Kaiser, Ansier, Ader, Murphy and Nunez.

*Complaint* at ¶¶'s 30–33. The plaintiffs aver that the acts of the defendants and their agents as alleged in count I resulted in "lost profits/income, impairment of reputation, humiliation, emotional distress, attorney's fees and costs." *Id.* at ¶ 34.

At a minimum, to plead a violation of the Fourth Amendment actionable under *Bivens* by the individual defendants in their personal capacities, the plaintiffs must allege facts in their complaint demonstrating that the individual defendants were in some way involved in an unreasonable search and seizure con-

ducted at the premises of KMC that occurred without a warrant and/or without probable cause. *See, e.g., Blackburn v. Snow,* 771 F.2d 556, 563–64 (1st Cir.1985).

The plaintiffs allege that the search and seizure conducted at the premises of KMC on September 13, 1990, was pursuant to a warrant issued by Magistrate Judge Goodstein on September 12, 1990. *See* Complaint at ¶¶'s 20 and 30. Since the September 13, 1990, search and seizure was pursuant to a warrant, the gravamen of the plaintiffs' Fourth Amendment *Bivens* claims against the individual defendants in their personal capacities can only be that the warrant was issued without probable cause. However, the plaintiffs' allegations describing the roles of the individual defendants in the issuance of the allegedly deficient September 12, 1990, warrant are either nonexistent or completely conclusory.

The plaintiffs fail to make any meaningful factual allegations whatsoever in count I against Mr. Juppe concerning his role in the issuance of a warrant lacking in probable cause. Thus, as to him in his personal capacity, count I fails to state a claim for relief.

The allegations against the remaining individual defendants specifically named in count I (Mr. Saari, Mr. Kaiser, Mr. Ansier, Mr. Ader, Mr. Murphy, Mr. Nunez, Mr. Schafer, Mr. Myre), as well as those against Mr. Johnson, Mr. Ahern and Ms. Svoboda, who are not specifically named in count I but who are mentioned in the general allegations of the complaint tangentially related to count I, *see, e.g., Complaint* at ¶ 22, are entirely conclusory and thus also fail to state a Fourth Amendment *Bivens* claim. These allegations consist of statements such as "the indictment against [Mr.] Kaufmann had no basis in fact or law" and the grand jury evidence gathered and presented under the direction of, and by certain defendants "was either untrue or gained through improper methods of investigation." *Id.* at ¶¶'s 22 and 31.

In my opinion, the plaintiffs' allegations are legally insufficient because they do not consist of *facts* alleging how the indictment had "no basis in fact or law" or what "untrue" evidence or improperly obtained evidence was presented to the grand jury. For example, there are no allegations that the indictment was obtained through the use of fraudulent drug transactions, fabricated transcripts of incriminating conversations, fallacious reports of undercover surveillance, unauthorized electronic recordings, warrantless searches, etc. Thus, count I will be dismissed, without prejudice, against the individual defendants in their personal capacities for failure to state a claim because virtually all the allegations against them consist of non-factual legal conclusions.

█ The government bolsters its already strong argument for the dismissal of count I against Mr. Ader, Mr. Murphy, Mr. Nunez and Ms. Svoboda in their personal capacities for failure to state a claim by pointing out that count I of the plaintiffs' complaint is particularly deficient against these four defendants because no facts are alleged connecting these supervisory officials to the alleged violation of the Fourth Amendment by their subordinates. The plaintiffs contend that their complaint contains factual allegations of "authorization, approval, and knowing acquiescence" by Mr. Ader, Mr. Murphy, Mr. Nunez, and Ms. Svoboda of the unconstitutional activities allegedly carried out by their subordinates. I disagree.

The plaintiffs' complaint is completely devoid of factual allegations demonstrating that Mr. Ader, Mr. Murphy, Mr. Nunez, and Ms. Svoboda directed their subordinates to gather "untrue" evidence or obtain evidence by "improper methods" to present to the grand jury so that ultimately an unlawful search and seizure could be conducted at the premises of KMC based on an illegally secured criminal indictment. In count I, all the plaintiffs allege is that untrue and improperly obtained information was gathered and presented to the grand jury "under the direction" of Mr. Ader, Mr. Murphy, and Mr. Nunez. *See id.* at ¶¶'s 32–33. This conclusory allegation is insufficient to state a Fourth Amendment *Bivens* claim against these four defendants in their personal capacities. Thus, the already convincing case to dismiss count I against the individual defendants in their personal capacities is even more compelling with respect to Mr. Ader, Mr. Murphy, Mr. Nunez and Ms. Svoboda.

*(b) Count II*

In count II of their complaint, the plaintiffs allege that the defendants violated the plaintiffs' Fifth Amendment due process rights actionable under *Bivens.* *See Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (holding that a cause of action and damages remedy can be implied directly under the Constitution when the Due Process Clause of the Fifth Amendment is violated).

In addition to the general allegations of the complaint summarized in Part I, the plaintiffs allege that Mr. Juppe "furnished a draft pre-sentence report compiled [sic] based solely upon information received from the government and . . . [o]n information and belief, the report resulted in [Mr.] Kaufmann receiving an extra harsh sentence." *Complaint* at ¶ 36. As to Mr. Johnson, the plaintiffs aver that he "knowingly presented untrue testimony and continued his prosecution of [Mr.] Kaufmann for one improper purpose, in order to 'put [Mr.] Kaufmann out of business.'" *Id.* at ¶ 37. The complaint also charges that the acts of the defendants "resulted in the arrest of [Mr.] Kaufmann and the taking of plaintiffs' property, in addition to lost profits/income, impairment of reputation, humiliation, emotional distress, attorney's fees and costs" all in violation of the Fifth Amendment actionable under *Bivens. Id.* at ¶ 38.

A claim of unconstitutional deprivation under the Fifth Amendment has three essential elements: (1) the claimant must be deprived of a protectable interest; (2) that deprivation must be due to some government action; and (3) the deprivation must be without due process. *Cospito v. Heckler,* 742 F.2d 72, 80 (3d Cir.1984). Furthermore, "'a showing of mere negligence on the part of [federal] officials is insufficient to implicate an individual's due process rights for purposes of a claim under [*Bivens* ].'" *Bush,* 791 F.Supp. at 1325 (quoting *Rascon v. Hardiman,* 803 F.2d 269, 273 (7th Cir.1986)). To prevail, the plaintiffs must allege facts "'that the official[s] knowingly, willfully, or at least recklessly caused the alleged deprivation by . . . [their] . . . action or failure to act.'" *Id.* (quoting *Rascon,* 803 F.2d at 274).

I find that the plaintiffs have failed to state a claim in count II against the individual defendants in their personal capacities. First, no specific factual allegations are made against any of the individual defendants except for Mr. Juppe and Mr. Johnson. Second, although the allegations against Mr. Juppe and Mr. Johnson constitute a charge that the plaintiffs were deprived of liberty and property by the action of government officials, the complaint is devoid of any factual allegations describing how the plaintiffs' due process rights were violated.

In my opinion, based on the allegations in the plaintiffs' present complaint, Mr. Kaufmann received due process. He was convicted only after a jury trial. He also prosecuted an unsuccessful appeal of his conviction. *See United States v. Kaufmann,* 985 F.2d 884 (7th Cir.1993). On the other hand, noticeably absent from the plaintiffs' complaint are factual allegations of due process violations. For example, there are no claims of perjured testimony introduced and admitted during Mr. Kaufmann's trial, phony exhibits introduced and admitted at trial, improprieties on the part of the prosecutor or probation officer at trial or during sentencing, or other facts that might establish that any of the individual defendants "knowingly, willfully, or at least recklessly caused the alleged '[Fifth Amendment] deprivation by . . . [their] . . . action or failure to act.'" *Bush,* 791 F.Supp. at 1325 (quoting *Rascon,* 803 F.2d at 274). Therefore, count II against the individual defendants in their personal capacities will be dismissed, without prejudice, for failure to state a claim for relief.

*(c) Count III*

In Count III, the plaintiffs allege that the actions of the defendants constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and actionable under *Bivens. See Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1979) (holding that allegations of a violation of the Eight Amendment's proscription against cruel and unusual punishment gives rise to a cause of action for damages under *Bivens* ).

■ The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." To state an Eighth Amendment claim against the individual defendants in their personal capacities under *Bivens,* the plaintiffs must allege facts in their complaint satisfying both the objective and subjective elements of a cruel and unusual punishment allegation. *See Wilson v. Seiter,* 501 U.S. 295, ——, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). The objective test is whether the deprivation was sufficiently serious and looks to the conditions of confinement. *Id.* The subjective component looks to intent and asks whether officials acted with a sufficiently culpable state of mind. *Id.*

■ I have no difficulty concluding that count III fails to state a claim against the individual defendants in their personal capacities. First, three of the four plaintiffs were never incarcerated so they do not have a claim against the defendants for "cruel and unusual punishment." As for Mr. Kaufmann, the plaintiffs' complaint includes no factual allegations that the individual defendants subjected him to prison conditions that, when viewed objectively, amounted to a serious deprivation of his rights (e.g. in prison environment with asbestos fibers, *see Diaz v. Edgar,* 831 F.Supp. 621, 624 (N.D.Ill.1993)) or that such a deprivation of his rights was inflicted upon him with a culpable state of mind by the individual defendants. Count III against the individual defendants in their personal capacities will be dismissed, without prejudice, for failure to state a claim for relief.

*(d) Count IV*

The plaintiffs concede in their responsive brief to the two pending motions to dismiss that count IV fails to state a claim upon which relief can be granted. Therefore, count IV against the individual defendants in their personal capacities will be dismissed without prejudice.

*(e) Count V*

Count V is captioned "Outrageous Conduct Actionable Under Wisconsin Common Law

and *Bivens.*" In addition to the allegations already summarized in Part I, count V consists of the following additional allegations:

44. The conduct of each of each of the individual defendants in conspiring to deprive the plaintiffs of their constitutional rights and in actually depriving them of their constitutional rights was so outrageous, willful and in wanton disregard of plaintiffs' constitutionally protected rights that it warrants the assessment of punitive and exemplary damages in a sum to be deemed fair and reasonable by the trier-of-fact, recoverable under *Bivens* as well as Wisconsin common law.

45. The willful and wanton conduct of the defendants in total disregard of plaintiffs' rights caused plaintiffs' injuries.

*Complaint* at ¶¶'s 44–45. The court will treat this as a *Bivens* claim since that is what the plaintiffs have captioned it.

*Bivens* "established that the victims of a *[federal] constitutional* violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980) (emphasis added). I have found no authority that "outrageous conduct" is a federal constitutional violation. Furthermore, the allegations contained in count V alleging a deprivation of constitutional rights are entirely conclusory. Count V against the individual defendants in their personal capacities will be dismissed, without prejudice, for failure to state a claim.

### 3. Absolute Immunity

■ The doctrine of absolute immunity strengthens the case for dismissing counts I through V against Mr. Johnson, Mr. Juppe and Mr. Schafer in their personal capacities for failure to state a claim for relief. Absolute immunity may properly be raised in support of a motion to dismiss for failure to state a claim. *See Auriemma v. Montgomery,* 860 F.2d 273, 275 (7th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989); *Eades v. Sterlinske,* 810 F.2d 723, 724 (7th Cir.1987), *cert. denied,* 484 U.S. 847, 108 S.Ct. 143, 98 L.Ed.2d 99 (1987).

The government argues that Mr. Johnson and Mr. Juppe are shielded from liability in their personal capacities in counts I through V by absolute quasi-judicial immunity and that Mr. Schafer is protected from liability in his personal capacity in counts I through V under the doctrine of absolute witness immunity. Each argument will be addressed in turn.

### (a) Mr. Johnson—Absolute Prosecutorial Immunity

 Absolute prosecutorial immunity provides that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons,* — U.S. —, —, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993). The doctrine of absolute prosecutorial immunity also applies to federal prosecutors. *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985); *Daniels v. Kieser,* 586 F.2d 64, 68 (7th Cir.1978), *cert. denied,* 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979). The protection is a broad one: a prosecutor who in preparing for the initiation of judicial proceedings or for trial engages in malicious or dishonest actions that deprive a person of liberty is, nevertheless, shielded from liability under the doctrine of absolute immunity. *Imbler v. Patchman,* 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976). Absolute prosecutorial immunity also applies to prosecutors presenting evidence to grand juries. *See Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986). However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Fitzsimmons,* — U.S. at —, 113 S.Ct. at 2615. When a prosecutor " 'functions as an administrator rather than as an officer of the court' he is entitled only to qualified immunity." *Id.* at —, 113 S.Ct. at 2616 (quoting *Imbler,* 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33).

 The plaintiffs concede that Mr. Johnson is entitled to absolute immunity as to counts I through V against him in his personal capacity arising from his actions that were prosecutorial in nature. However, they argue that he is only entitled to qualified immunity for his non-prosecutorial actions. The problem with this argument is that the only significant allegations against Mr. Johnson allege that he presented untrue or improperly obtained evidence to the grand jury and ultimately prosecuted Mr. Kaufmann at trial. *See* Complaint at ¶¶'s 16, 22, 24 and 37. These actions on the part of Mr. Johnson clearly are acts undertaken by him as a prosecutor. The complaint is devoid of any allegations concerning Mr. Johnson's "administrative duties" and "investigatory functions" unrelated to his preparation for the initiation of his prosecution of Mr. Kaufmann. Therefore, based on the allegations contained in the present complaint, I conclude that absolute prosecutorial immunity provides another ground for dismissing counts I through V against Mr. Johnson in his personal capacity.

### (b) Mr. Juppe—Absolute Quasi–Judicial Immunity

 Probation officers have quasi-judicial absolute immunity from damage claims for alleged misconduct in the investigation and preparation of pre-sentence reports. *See Spaulding v. Nielsen,* 599 F.2d 728, 729 (5th Cir.1979). *See also Forrester v. White,* 792 F.2d 647, 657 (7th Cir.1986) (citing *Spaulding* and noting that "probation officers have derivative absolute immunity"), *rev'd on other grounds,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). The plaintiffs' allegations against Mr. Juppe (which appear primarily in count II—*see Complaint* at ¶ 36) solely concern his role in preparing Mr. Kaufmann's presentence report. I find that absolute quasi-judicial immunity provides another basis for dismissing counts I through V against Mr. Juppe in his personal capacity since the plaintiffs' allegations against him fall squarely within his duties as a probation officer.

*(c) Mr. Schafer—Absolute Witness Immunity*

 Witnesses who testify at trial are absolutely immune from an award of damages against them with respect to claims premised on that testimony. *Briscoe v. LaHue,* 460 U.S. 325, 326, 103 S.Ct. 1108, 1110–11, 75 L.Ed.2d 96 (1983). Such immunity also extends to testimony given at grand jury proceedings. *Kincaid v. Eberle,* 712 F.2d 1023, 1023–24 (7th Cir.1983), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983).

The only significant allegation in the plaintiffs' complaint against Mr. Schafer is that he provided "untrue information" to the grand jury leading to the indictment of Mr. Kaufmann. *See Complaint* at ¶ 33. There is also the inference that he provided perjured testimony at Mr. Kaufmann's trial. *See id.* at ¶ 24. Based on the limited conclusory allegations against Mr. Schafer, I conclude that absolute witness immunity provides another reason to dismiss counts I through V against him in his personal capacity for failure to state a claim for relief.

### 4. Qualified Immunity

 The doctrine of qualified immunity further fortifies the case for dismissing counts I through V against the individual defendants in their personal capacities for failure to state a claim. Raising qualified immunity in a motion to dismiss is permissible although typically such a defense is presented in a summary judgment motion after the benefit of additional factual development. *McMath v. City of Gary, Indiana,* 976 F.2d 1026, 1031 (7th Cir.1992). Consequently, a court may refrain from ruling on qualified immunity until further development of the facts. *See, e.g., Tracy v. Bittles,* 820 F.Supp. 396, 405 (N.D.Ind.1993). Nevertheless, I elect to address the qualified immunity issue now.

Qualified immunity protects government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396

(1982). The test is an objective one, requiring a plaintiff to " 'demonstrate that a reasonable official, confronted with the specific facts at issue and the law in effect at the time, would have known that his conduct violated the plaintiff's constitutional rights.' " *Davis v. Owens,* 973 F.2d 574, 576 (7th Cir. 1992) (quoting *Schertz v. Waupaca County,* 875 F.2d 578, 583 (7th Cir.1989)).

 To avoid dismissal of a complaint for failure to state a claim based on qualified immunity, the plaintiffs must allege facts in their complaint which, taken as true, assert that the individual defendants violated clearly established constitutional rights of which a reasonable person would have known. *See Landstrom v. Illinois Dep't of Children & Family Serv.,* 892 F.2d 670, 675 n. 8 (7th Cir.1990).

> The words "clearly established ... constitutional rights" may not be used to read the defense of immunity out of federal tort law by the facile expedient of stating constitutional rights in the most general possible terms, so that anyone who prevails on the merits of a claim based on (for example) the First Amendment's free exercise of religion clause, however novel that claim is, can defeat the defense of immunity simply by pointing out that the right to the free exercise of one's religion has long been a clearly established constitutional right. *The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful.*

*Azeez v. Fairman,* 795 F.2d 1296, 1301 (7th Cir.1986) (emphasis added). *See also Siegert v. Gilley,* 500 U.S. 226, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.").

In my opinion, based on the dearth of meaningful factual allegations contained in the plaintiffs' complaint, the doctrine of qualified immunity protects the individual defendants from liability based on counts I

through V against them in their personal capacities. The plaintiffs' allegations in counts I through V are entirely conclusory and do no more than state alleged constitutional rights violations by the defendants in the most general terms rather than in a particularized manner so as "to put potential defendants on notice that their conduct probably is unlawful" and violates the plaintiffs' clearly established constitutional rights. *Azeez*, 795 F.2d at 1301. I find that qualified immunity provides yet another basis for dismissing counts I through V against the individual defendants in their personal capacities.

### C. Rule 12(b)(1), Federal Rules of Civil Procedure—Lack of Subject Matter Jurisdiction over Counts VI and VII

■ The government does not seek dismissal of counts VI and VII based on a claim of failure to state a claim pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. Instead, the government has moved to dismiss counts VI and VII against the United States and the individual defendants in their official and personal capacities for lack of subject matter jurisdiction. However, for reasons already articulated, the court will dismiss, with prejudice, counts VI and VII against the individual defendants in both their official and personal capacities. *See supra* Part II. Thus, I will address the government's motion (motion # 1) to dismiss for lack of subject matter jurisdiction only with respect to counts VI and VII against the United States.

The plaintiffs caption count VI as "Malicious Prosecution Actionable Under Wisconsin Common Law and 28 U.S.C. 2680(h)," and count VII is captioned "Abuse of Process Actionable Under Wisconsin Common Law and 28 U.S.C. 2680(h)." The plaintiffs allege that this court has subject matter jurisdiction over counts VI and VII because, pursuant to 28 U.S.C. § 2680(h) of the FTCA, the United States has consented to suit and waived its sovereign immunity. 28 U.S.C. § 2680(h) provides, in part:

> The provisions of this chapter and section 1346(b) of this title [i.e. the FTCA] shall not apply to ... [a]ny claim arising out of ... malicious prosecution, abuse of process ... *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising ... out of ... abuse of process, or malicious prosecution. For the purposes of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

Relying on 28 U.S.C. § 2680(c) of the FTCA, the government argues that this court does not have subject matter jurisdiction over counts VI and VII. 28 U.S.C. § 2680(c) states that "[t]he provisions of this chapter and section 1346(b) of this title [i.e. the FTCA] shall not apply to ... [a]ny claim arising in respect of the assessment or collection of any tax or customs duty...." The government contends that the alleged acts of the United States and those of the individual defendants in their official capacities which led to the criminal indictment, prosecution and conviction of Mr. Kaufmann relate solely to tax assessment and collection activities. Therefore, the government argues that, as to counts VI and VII, it has not waived its sovereign immunity, and those counts must be dismissed for lack of subject matter jurisdiction.

I disagree with the government because the alleged acts of the United States and its agents were undertaken to complete a *criminal prosecution* under 18 U.S.C. § 1956(a)(1)(B) & (a)(3)(B) for money laundering and not primarily for the collection of taxes. Furthermore, I find that some or all of the individual defendants acting in their official capacities as employees of the IRS are law enforcement officers within the meaning of 28 U.S.C. § 2680(h). *See Wright v. United States*, 719 F.2d 1032, 1035–36 (9th Cir.1983) (holding that United States subject to FTCA claims under 28 U.S.C. § 2680(h) and that 28 U.S.C. § 2680(c) does not apply where IRS agent participates in events related to a criminal prosecution). I conclude that this court does have subject matter jurisdiction over the plaintiffs' two FTCA claims (counts VI and VII) against the United

States pursuant to 28 U.S.C. § 2680(h). The government's motion (motion # 1) to dismiss counts VI and VII against the United States will be denied.

### D. Attorneys Fees

The plaintiffs also request attorneys fees in what is designated as "count VIII." It is premature to make a dispositive ruling on the plaintiffs' attorney fee request until the merits of this entire action are resolved since fees are contingent upon the plaintiffs' prevailing in this action. This is especially true because the parties have not adequately briefed this issue.

### IV. CONCLUSION

The government has moved in two separate motions (motions # 1 and # 3) for the dismissal of both the plaintiffs' complaint and action. All claims in the plaintiffs' complaint will be dismissed with prejudice except for counts I through V against the individual defendants in their personal capacities, which will be dismissed without prejudice, and counts VI and VI against the United States which will not be dismissed.

Although the court has concluded that counts I through V of the plaintiffs' present complaint against the individual defendants in their personal capacities are legally insufficient, it is possible that these counts can be saved by amendment. For that reason, and the fact that counts VI and VII against the United States will not be dismissed, the court will deny the government's motions (i.e. motions # 1 and # 3) to dismiss the plaintiffs' *action. See Benjamin v. United States,* 833 F.2d 669, 672 (7th Cir.1987) (holding that only where the action cannot be saved by an amendment to the complaint may there be dismissal of the *action*). Pursuant to Rule 15(a), Federal Rules of Civil Procedure, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served...." A motion to dismiss is not a responsive pleading. *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1111 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Therefore, the plaintiffs, if they elect to do so, may serve and file an amended complaint within thirty days from the date of this decision and order. However, failure to file timely an amended complaint attempting to correct the deficiencies in counts I through V against the individual defendants in their personal capacities will then result in the dismissal, with prejudice, of counts I through V against the individual defendants in their personal capacities.

### ORDER

Therefore, IT IS ORDERED that the motion to dismiss filed by the government on behalf of the United States and the individual federal defendants (motion # 1) be and hereby is granted to the extent that counts I through V of the plaintiffs' complaint against the United States and the individual federal defendants in their official capacities are dismissed with prejudice.

IT IS ALSO ORDERED that the motion to dismiss filed by the government on behalf of the United States and the individual federal defendants (motion # 1) be and hereby is granted to the extent that counts VI and VII of the plaintiffs' complaint against the individual federal defendants in their official and personal capacities are dismissed with prejudice.

IT IS FURTHER ORDERED that the motion to dismiss filed by the government on behalf of the United States and the individual federal defendants (motion # 1) be and hereby is granted to the extent that counts I through V of the plaintiffs' complaint against the individual federal defendants in their personal capacities are dismissed without prejudice.

IT IS FURTHER ORDERED that the motion to dismiss filed by the government on behalf of the United States and the individual federal defendants (motion # 1) be and hereby is denied to the extent that it seeks the dismissal of counts VI and VII against the United States.

IT IS FURTHER ORDERED that the motion to dismiss filed by the government on behalf of the United States and the individual federal defendants (motion # 1) be and hereby is denied to the extent that it seeks the dismissal of the plaintiffs' action in its entirety.

IT IS FURTHER ORDERED that the motion to dismiss filed by the government on behalf of Mr. Schafer (motion # 3) be and hereby is granted to the extent that counts I through V of the plaintiffs' complaint against him in his official capacity are dismissed with prejudice.

IT IS FURTHER ORDERED that the motion to dismiss filed by the government on behalf of Mr. Schafer (motion # 3) be and hereby is granted to the extent that counts VI and VII of the plaintiffs' complaint against him in his official and personal capacity are dismissed with prejudice.

IT IS FURTHER ORDERED that the motion to dismiss filed by the government on behalf of Mr. Schafer (motion # 3) be and hereby is granted to the extent that counts I through V of the plaintiffs' complaint against him in his personal capacity are dismissed without prejudice.

IT IS FURTHER ORDERED that the motion to dismiss filed by the government on behalf of Mr. Schafer (motion # 3) be and hereby is denied to the extent that it seeks the dismissal of the plaintiffs' action in its entirety.

IT IS FURTHER ORDERED that the plaintiffs be and hereby are authorized to serve and file an amended complaint within thirty days from the date of this decision and order.

IT IS FURTHER ORDERED that counts I through V against the individual defendants will be dismissed, with prejudice, if the plaintiffs fail to serve and file, within thirty days from the date of this decision and order, an amended complaint attempting to correct the deficiencies in counts I through V against the individual defendants in their personal capacities.

IT IS FURTHER ORDERED that the motion to stay discovery filed by the government on behalf of the United States and the individual federal defendants (motion # 2) be and hereby is dismissed as moot.

IT IS FURTHER ORDERED that the motion to stay discovery filed by the government on behalf of Mr. Schafer (motion # 4) be and hereby is dismissed as moot.

IT IS FURTHER ORDERED that no costs will be awarded to any party in connection with these motions.